UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KEN COOPER,

    Plaintiff,

v.

KATHLEEN ALLISON, et al.,

    Defendants.

Case No. 20-09415 BLF (PR)

**ORDER OF DISMISSAL WITH LEAVE TO AMEND**

Plaintiff filed the instant *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against prison officials and staff at San Quentin State Prison ("SQSP") where he is currently incarcerated. Dkt. No. 4. Plaintiff's motion for leave to proceed *in forma pauperis* shall be addressed in a separate order.

## DISCUSSION

### A. Standard of Review

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim

upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See id.* § 1915A(b)(1),(2). Pro se pleadings must, however, be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

**B.    Plaintiff's Claims**

Plaintiff presents numerous allegations based on conditions at SQSP in response to the COVID-19 pandemic as well as claims arising amid those conditions. The Court will review his allegations with the following legal standards in mind.

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Amendment imposes duties on these officials, who must provide all prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety. *See Farmer*, 511 U.S. at 832; *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 199-200 (1989). A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, *id*. (citing *Wilson*, 501 U.S. at 297).

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (*en*

2

*banc*). A determination of a "deliberate indifference" claim involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *Id.* at 1059.

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment. *Id.* at 1059-60.

A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer* at 837. The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* If a prison official should have been aware of the risk, but did not actually know, the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002). "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). In addition, a "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference . . . [and] [a prisoner] would have no claim for deliberate medical indifference unless the denial was harmful." *Shapely v. Nevada Bd. Of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

Exercise is one of the basic human necessities protected by the Eighth Amendment. *See LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993); *Toussaint v. Rushen*, 553 F. Supp. 1365, 1380 (N.D. Cal. 1983), *aff'd in part and vacated in part*, 722 F.2d 1490 (9th Cir. 1984). Some form of regular exercise, including outdoor exercise, "is extremely

3

important to the psychological and physical well-being" of prisoners. *See Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979). Prison officials therefore may not deprive prisoners of regular exercise. *See Toussaint v. McCarthy*, 597 F. Supp. 1388, 1393 (N.D. Cal. 1984). Although the Ninth Circuit did not specify the "minimum amount of weekly exercise that must be afforded to detainees who spend the bulk of their time inside their cells," the court held that ninety minutes per week of exercise, which is the equivalent of slightly less than thirteen minutes a day, does not comport with Eighth Amendment standards. *Pierce v. County of Orange*, 526 F.3d 1190, 1212 (9th. Cir. 2008).

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

In a § 1983 or a *Bivens* action – where employers and supervisors are not made to automatically answer for the torts of their employees and subordinates – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677 (finding under *Twombly*, 550 U.S. at 544, and Rule 8 of the Federal Rules of Civil Procedure, that complainant-detainee in a *Bivens* action failed to plead sufficient facts "plausibly showing" that top federal officials "purposely adopted a policy of classifying post-September-11 detainees as 'of high interest' because of their race, religion, or national origin" over more likely and non-discriminatory explanations).

A supervisor may be liable under § 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir. 2012). Even if a supervisory official is not directly

4

involved in the allegedly unconstitutional conduct, "[a] supervisor can be liable in this individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011) (citation omitted). The claim that a supervisory official "knew of unconstitutional conditions and 'culpable actions of his subordinates' but failed to act amounts to 'acquiescence in the unconstitutional conduct of his subordinates' and is 'sufficient to state a claim of supervisory liability.'" *Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018) (quoting *Starr*, 652 F.3d at 1208) (finding that conclusory allegations that supervisor promulgated unconstitutional procedures which authorized unconstitutional conduct of subordinates do not suffice to state a claim of supervisory liability).

Plaintiff is suing for the prison's allegedly inadequate response to the COVID-19 pandemic. First, he alleges that he wrote letters to Dr. Pachynski and Warden R. Broomfield regarding the lack of masks in March 2020, and that the following month, masks were provided and mandated to be worn. Dkt. No. 4 at 9. Plaintiff also complained about the lack of social-distancing and crowd control to Captain Arnold, Captain Bloise, and Sgt. France. *Id.* He complained to Lt. Teixera, Lt. Haub, Sgt. Dutton, and Officer Dearmore about the exposure of inmates to those who were in medical quarantine. *Id.* at 10. Plaintiff also claims inadequate ventilation and lack of an "independent hot-water hose-bib" to clean the shower area. *Id.* at 10-11.

Then on May 30, 2020, 121 inmates from Chino State Prison ("CSP") were transferred to SQSP, who were not tested for COVID prior to integration with the SQSP population which lead to more than 2000 inmates and staff becoming infected, resulting in 28 deaths. *Id.* at 11. Plaintiff claims that when he and his cellmate were tested on June 25, 2020, his cellmate tested positive while Plaintiff tested negative. *Id.* at 12. However, Plaintiff was forced to remain in the same cell, even after he informed Lt. Teixera that he was "high risk medical." *Id.* According to Plaintiff, Lt. Teixera's response was "Don't

5

worry you'll get it too." *Id.* Plaintiff claims his "high risk" conditions include his age (60's), early-stage emphysema, high blood pressure, prior TB and Hepatitis B and C, chronic arthritis, and obesity. *Id.* On July 9, 2020, Plaintiff tested positive for COVID-19, and had difficulty breathing, sore throat, loss of sense of taste and smell for several days, extreme muscle pain, excruciating headaches, and no energy. *Id.* at 13. On July 12, 2020, he was moved to the "Alternative Covid Care Center." *Id.* Plaintiff was returned to his cell on approximately July 27, 2020. *Id.* After his return to Westblock, Plaintiff claims he was permitted to shower every 4-5 days, with no exercise program in several months. *Id.* at 14. On August 1, 2020, shower and exercise were combined, but the conditions remained overcrowded with no masks. *Id.*

Plaintiff also claims that he has been waiting for months for "optometry and dental" care. *Id*. at 15. He claims to have constant neck and right shoulder pain due to neck/spine problems. *Id.* He states that all "medical/dental/optometry" problems were indefinitely suspended due to "emergency conditions" as of March 17, 2020. *Id.*

Plaintiff also mentions a scheduled transfer of 50 inmates from North Kern State Prison which was approved by Warden Ron Davis despite some having tested positive for Covid-19. *Id.* at 16. Plaintiff claims that Correctional Officer S. Beaton at "Receiving and Release" refused the transfer stating, "I don't want to be on that lawsuit." *Id.* It is unclear whether this transfer actually took place and what resulted from it.

Lastly, Plaintiff claims that his power was shutoff several weeks in a row from August through September 2020. *Id.* Plaintiff claims these incidents stopped only after he told Correctional Officer Dearmore that he would amend his grievance to include a First Amendment retaliation claim. *Id.* He asserts that he wrote to Captain Arnold and the Plant Operation's Supervisor every week regarding his power being turned off. *Id.* Plaintiff claims that Officer Dearmore is aware of the grievance he filed, and he believes Officer Dearmore's actions were "motivated to 'chill'" his speech. *Id.*

Based on the above allegations, Plaintiff asserts that his Eighth Amendment rights

6

were violated due to the above conditions. Dkt. No. 4 at 18. Specifically, he asserts that his exposure to and then contracting COVID-19 constitutes a failure to protect claim. *Id.* at 22. He asserts that the right to a shower and outdoor exercise are protected liberty interests and therefore the denial of these interests violated due process. *Id.* at 23. He also asserts that the lack of dental, medical and optometry care since March 17, 2020, constitutes deliberate indifference. *Id*. at 27. Plaintiff also asserts that he has established supervisor liability because those in supervisory positions were notified of the substantial risk of the spread of Covid-19 and yet failed to act appropriated. *Id.* at 24. He asserts that he has made "causal connection to respondeat superiority liability" through his extensive contact with these individuals. *Id.* at 25.

Plaintiff names 19 defendants in the complaint but fails to identify the actions of each defendant and describe how each violated his constitutional rights. For example, Plaintiff names the Director of the CDCR, Kathleen Allison, Secretary Ralph Diaz, and Governor Gavin Newsom but makes no factual allegations against them. Dkt. No. 4 at 8. Furthermore, with respect to several of the claims, Plaintiff only presents conclusory allegations with little support and fails to identity the actions of specific defendants. For example, Plaintiff asserts that the was denied adequate showers and exercise but fails to allege which defendants were responsible for this inadequacy. *See supra* at 6. Furthermore, he claims that there was inadequate ventilation and lack of an "independent hot-water hose-bib" to clean the shower area but fails to identify any specific defendants who were aware that these conditions posed a threat to Plaintiff and yet failed to act. *Id.* at 10-11. In addition, Plaintiff's general claim that he was without dental and optometry care, without more, fails to state a claim. He must explain what objectively serious conditions he suffered from that required dental and optometric care and describe how each defendant involved knew that he was facing a substantial risk of serious harm and disregarded that risk by failing to take reasonable steps to abate it. With respect to the lack of certain safety precautions at the start of the pandemic in March 2020, Plaintiff fails to

7

allege sufficient facts to indicate that each named defendant acted with deliberate indifference. Rather, he states that after he complained about the lack of masks in a letter to Dr. Pachynski and Warden Broomfield, masks were provided the following month and mandated to be worn. *See supra* at 5. It cannot be said that Defendants acted with deliberate indifference when they responded to his letter by providing masks and ordering they be worn rather than ignoring his letter.

Lastly, Plaintiff's retaliation claim against Officer Dearmore is conclusory. *See supra* at 6. Plaintiff claims that he experienced power shutdowns during August and September 2020. *Id.* However, he makes a conclusory allegation that the shutdowns were retaliatory without explaining what complaint he filed, when he filed it, who was aware of the complaint, and how the power shutdowns were intended to chill his First Amendment rights. His claim against Officer Dearmore is therefore conclusory without more allegations in support.

On the other hand, the complaint states a cognizable Eighth Amendment deliberate indifference claim against unsafe conditions based on the allegation that after his cellmate tested positive for COVID-19, Plaintiff was forced to remain housed with him even after he informed Defendant Lt. Teixera that he was "high risk," and that Plaintiff later contracted COVID-19 and suffered its effects. *See supra* at 5-6; *Farmer v. Brennan*, 511 U.S. 825, 832, 834 (1994). Lt. Teixera's alleged words, if true, indicate that he knew of an excessive risk to Plaintiff's health and yet failed to take reasonable steps to abate it. *Id.* at 837. Plaintiff may proceed on a claim solely against this Defendant if he chooses and strike the other claims from this action.

In preparing an amended complaint, Plaintiff should keep the following principles in mind. Liability may be imposed on an individual defendant under § 1983 only if Plaintiff can show that the defendant proximately caused the deprivation of a federally protected right. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988); *Harris v. City of Roseburg*, 664 F.2d 1121, 1125 (9th Cir. 1981). A person deprives another of a

8

constitutional right within the meaning of section 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains. *See Leer*, 844 F.2d at 633. Accordingly, Plaintiff must allege sufficient facts describing each named defendant's actions or failure to act that caused the violation of his constitutional rights.

Plaintiff should also keep in mind that claims presented in a single action must be related. "[M]ultiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). "Unrelated claims against different defendants belong in different suits," not only to prevent the sort of "morass" that a multi-claim, multi-defendant suit can produce, "but also to ensure that prisoners pay the required filing fees – for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of required fees." *Id*. (citing 28 U.S.C. § 1915(g)). For example, it may be that Plaintiff's inadequately pled optometric and dental care needs claim are not related to his COVID-19 claims. In which case, he must file the denial of optometric and dental care needs claim in a separate action.

## CONCLUSION

For the reasons state above, the Court orders as follows:

1. The complaint is **DISMISSED with leave to amend**. Within **twenty-eight (28) days** from the date this order is filed, Plaintiff shall file an amended complaint using the court's form complaint to correct the deficiencies described above. The amended complaint must include the caption and civil case number used in this order, *i.e.*, Case No. C 20-9415 BLF (PR), and the words "AMENDED COMPLAINT" on the first page. Plaintiff must answer all the questions on the form in order for the action to proceed. Plaintiff is reminded that the amended complaint supersedes the original, and Plaintiff may not make references to the original complaint. Claims not included in the amended

9

complaint are no longer claims and defendants not named in an amended complaint are no longer defendants. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir.1992).

    2.    In the alternative, this action can proceed solely on the Eighth Amendment deliberate indifference to unsafe conditions claim against Lt. Teixera as discussed above. *See supra* at 8. In the same time provided above, Plaintiff may file notice that he wishes to proceed solely on this claim and strike all other claims and defendants from this action.

    3.    **Failure to respond in accordance with this order by filing an amended complaint in the time provided will result in this matter proceeding solely on the Eighth Amendment deliberate indifference claim against Defendant Teixera and all other claims and defendants being stricken from the complaint without further notice to Plaintiff.**

**IT IS SO ORDERED.**

Dated: __April 28, 2021_____

                                                    BETH LABSON FREEMAN
                                                  United States District Judge