UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEN COOPER,<br>       Plaintiff,<br>    v.<br>KATHLEEN ALLISON, et al.,<br>       Defendants. | Case No. 20-09415 BLF (PR)<br>**ORDER OF PARTIAL DISMISSAL AND DISMISSAL WITH LEAVE TO AMEND** |

Plaintiff filed the instant *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against the officials and employees at San Quentin State Prison ("SQSP") where he is currently incarcerated, officials of the California Department of Corrections and Rehabilitation ("CDCR"), and officials at another prison. Dkt. No. 4. Subsequently, Plaintiff filed an amended complaint, Dkt. No. 9, which the Court deems to be the operative complaint in this matter. Fed. R. Civ. P. 15(a)(1). Plaintiff's motion for leave to proceed *in forma pauperis* shall be addressed in a separate order.

**DISCUSSION**

**A.**    <u>**Standard of Review**</u>

A federal court must conduct a preliminary screening in any case in which a

prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See id.* § 1915A(b)(1),(2). Pro se pleadings must, however, be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

B.      **Plaintiff's Claims**

The Court will review Plaintiff's allegations with the following legal principles in mind.

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Amendment imposes duties on these officials, who must provide all prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety. *See Farmer*, 511 U.S. at 832; *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 199-200 (1989). A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, *id.* (citing *Wilson*, 501 U.S. at 297).

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104

2

(1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (*en banc*). A determination of a "deliberate indifference" claim involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *Id.* at 1059.

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment. *Id.* at 1059-60.

A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer* at 837. The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* If a prison official should have been aware of the risk, but did not actually know, the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

In a § 1983 or a *Bivens* action – where employers and supervisors are not made to automatically answer for the torts of their employees and subordinates – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677 (finding under *Twombly*, 550 U.S. at 544, and Rule 8 of the Federal Rules of Civil Procedure, that complainant-detainee in a *Bivens* action failed to plead sufficient facts "plausibly showing" that top federal officials "purposely adopted a policy of classifying post-September-11 detainees as 'of high interest' because of their race,

religion, or national origin" over more likely and non-discriminatory explanations).

A supervisor may be liable under § 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir. 2012). Even if a supervisory official is not directly involved in the allegedly unconstitutional conduct, "[a] supervisor can be liable in this individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011) (citation omitted). The claim that a supervisory official "knew of unconstitutional conditions and 'culpable actions of his subordinates' but failed to act amounts to 'acquiescence in the unconstitutional conduct of his subordinates' and is 'sufficient to state a claim of supervisory liability.'" *Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018) (quoting *Starr*, 652 F.3d at 1208) (finding that conclusory allegations that supervisor promulgated unconstitutional procedures which authorized unconstitutional conduct of subordinates do not suffice to state a claim of supervisory liability).

A. **Factual Allegations**

Plaintiff is suing for prison officials' allegedly inadequate response to the COVID-19 pandemic, following Governor Gavin Newsom's declaration of a state of emergency on March 4, 2020. Dkt. No. 9-1 at 5. Plaintiff names the following defendants: Kathleen Allison, Director of the CDCR; Ralph Diaz, Secretary of the CDCR; Ron Davis, Associate Director of Reception Centers for the CDCR; Ron Broomfield, Acting Warden of SQSP; Clark Kelso, Federal Receiver appointed by the Plata/Coleman Court; Dr. A. Pachynski, SQSP's Chief Medical Officer; Dr. L. Escobell, the Chief Medical Officer ("CMO") at the California Institution for Men in Chino ("CIM"); R. Steven Tharratt, CDCR's Director of Medical Services; Clarence Cryer, SQSP's Healthcare Chief Executive Director; Dean Borders, Warden of the CIM; and Dr. Joseph Bick, CDCR's Director of California

4

Corrections Health Care Services ("CCHCS"). Dkt. No. 9-1 at 2-4.

Plaintiff first alleges that Warden R. Broomfield, Director Cryer, and Dr. Pachynski failed to provide "personal protective equipment" early in the pandemic, as it was not until late April 2020 that masks were provided to SQSP inmates. Dkt. No. 9-1 at 5.

Plaintiff next alleges that on May 27, 2020, the "department" committed to processing transfers within the prisons, presumably to lower risk of infection in overcrowded facilities, by the end of the month. Dkt. No. 91- at 5-6. Plaintiff claims that CIM was pressured by Dr. Bick and "management" to "do whatever is necessary to execute the transfers of vulnerable high risk i/m's during this time frame." *Id.* at 6. Plaintiff claims Dr. Bick was responsible for all transfer and testing protocols. *Id.* at 7. Plaintiff claims Mr. Kelso was involved in the transfer of 189 inmates with pre-existing medical conditions who were deemed vulnerable to infection from CIM in Chino to SQSP and another prison in Corcoran, both of which were "infection free." *Id.* at 6. Secretary Diaz, Director Allison, and Mr. Davis approved the transfer. *Id.* Plaintiff claims that transferring such high risk inmates to SQSP was not a reasonable option because SQSP has exceedingly poor ventilation, extraordinary close quarters, and inadequate sanitation due to its "antiquated infrastructure and overcrowding." *Id.* at 6. Furthermore, Plaintiff claims that despite Dr. Bick's directions, Dr. Escobell and Mr. Tharratt did not have all the inmates scheduled for the transfer (re)tested before the transfers began, and that Warden Borders approved the transfer of the untested inmates. *Id.* at 6-7, 8. Plaintiff also claims that the transfer itself did not comport with social distancing guidelines such that inmates likely became infected during transit. *Id.* at 9.

As part of the transfer order discussed above, 122 inmates from CIM arrived at SQSP on May 30, 2020. Dkt. No. 91- at 10. Plaintiff claims that SQSP nursing staff noticed two of the inmates had symptoms for COVID-19; the two inmates were placed in cells with open doors, allowing air to flow in-and-out. *Id.* Plaintiff claims that on June 1, 2020, Dr. Matthew Willis, the Marin County Public Health Officer, held a conference call

5

with Warden Broomfield, Director Cryer, and Dr. Pachynski, informing them that safety precautions needed to be in place, e.g., the sequestering of the transferred inmates from the SQSP population, masks worn, and restricted movements of exposed staff, etc.. *Id.* at 10, 13. However, Defendants chose not to implement those basic safety measures and informed Dr. Willis that he lacked authority to mandate measures to state run prisons. *Id.* at 10. The transferred inmates were not tested until they had already been at SQSP for at least six days, by which time the virus had already begun to spread. *Id.* at 10-11.

Plaintiff relies on an "Urgent Memo" authored by experts at the University of San Francisco ("UCSF"), dated June 15, 2020, which "assigned central importance to the prompt reduction of the population of SQ by at least 50% of current capacity." *Id.* at 12. Plaintiff also points to an order by Judge Tigar under *Plata*, stating that the CDCR's only option for minimizing the harm of the virus, particularly to elderly and otherwise medically vulnerable inmates, was to dramatically reduce the population at SQSP. *Id.* at 11. Plaintiff claims Defendants still refused to follow the recommendation of the Urgent Memo and Judge Tigar. *Id.* at 13.

Plaintiff claims that on June 25, 2020, he and his cellmate were tested for COVID-19. Dkt. No. 9-1 at 11. His cellmate was informed several days later that he tested positive for the virus while Plaintiff tested negative. *Id.* However, Plaintiff was forced to remain in the same cell with his infected inmate, as well as required to shower with other inmates who had tested positive. *Id.* Plaintiff claims he tested positive for the virus on July 7, 2020. *Id.* Plaintiff claims that he continues to experience adverse effects from the COVID-19 virus due to "numerous other etiological ailments, e.g., obesity, i.e., over 40 BMI, prior TB and Hepatitis B and C, extreme muscle pain correlative with worn 4th and 5th vertebrae in the neck region, further exacerbated by constant fatigue." *Id.*

Plaintiff claims that on October 20, 2020, the First District Court held that the CDCR acted with deliberate indifference to the risk of substantial harm to elderly and medically vulnerable prisoners at SQSP, by failing to follow the advice of their own

6

experts. *Id.* at 12.

Lastly, Plaintiff mentions a planned transfer of 50 inmates from North Kern State Prison which was approved by Mr. Davis despite some having tested positive for Covid-19. *Id.* at 12. Plaintiff claims that Correctional Officer S. Beaton at "Receiving and Release" refused the transfer stating, "I don't want to be on that lawsuit." *Id.* Plaintiff does not allege that this transfer actually took place and what resulted from it.

Based on the foregoing, Plaintiff seeks declaratory relief, injunctive relief to provide him with medical and dental care, and damages. Dkt. No. 9-1 at 14-15.

### B. Legal Claims

Plaintiff is suing each defendant individually and "in his [or her] official capacity." Dkt. No. 9-1 at 4. The Eleventh Amendment to the U.S. Constitution bars a person from suing a state in federal court without the state's consent. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984). The U.S. Supreme Court has held that state officials acting in their official capacities are not "persons" under Section 1983 because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, such a suit is therefore no different from a suit against the state itself. *Id.* Accordingly, the Eleventh Amendment bars Plaintiff's claims for monetary relief to the extent that they are based on acts by Defendants in their official capacities. *See id.* Such claims for damages must be dismissed.

With respect to the lack of certain safety precautions at the start of the pandemic in March 2020, such allegations indicate nothing more than negligence, especially where SQSP had no known cases of COVID-19 at the time. *See supra* at 5. Neither negligence nor gross negligence is actionable under § 1983 in the prison context. *See Farmer v. Brennan*, 511 U.S. 825, 835-36 & n.4 (1994); *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (gross negligence insufficient to state claim for denial of medical needs to prisoner). Accordingly, this claim fails to state a claim for relief. Lastly, the allegations

7

regarding the transfer of inmates from North Kern Prison fails to state a claim as there is no indication that the transfer actually took place and Plaintiff fails to allege how this incident resulted in the violation of his constitutional rights.

Based on the remaining allegations, the amended complaint states an Eighth Amendment deliberate indifference claim against unsafe conditions at SQSP. *See Farmer v. Brennan*, 511 U.S. 825, 832, 834 (1994). This claim shall proceed against the named individuals who were involved in the decision to transfer CIM based on the following allegations: (1) inmates who were already exposed to COVID-19 were not tested prior to their transfer out of CIM; (2) these potentially infected inmates were transported to SQSP in conditions that did not comply with recommended social distancing protocols, increasing the likelihood of further spread; (3) CIM inmates were exposed to the SQSP population without additional safety protocols in place; and (4) the failure by SQSP to properly quarantine infected inmates during the outbreak resulted in Plaintiff contracting COVID-19 and suffering its ill effects within one month after the transfer.

On the other hand, Plaintiff requests dental and optometry care as a form of relief but fails to explain how such medical needs are tied to his Eighth Amendment claim regarding COVID-19. Dkt. No. 9-1 at 15. If he wishes to assert an Eighth Amendment claim for inadequate dental and optometric care, he must explain what objectively serious conditions he suffered from that required dental and optometric care and describe how each defendant involved knew that he was facing a substantial risk of serious harm and disregarded that risk by failing to take reasonable steps to abate it. *See supra* at 2-3; *Estelle*, 429 U.S. at 104; *McGuckin*, 974 F.2d at 1059. However, if such a claim is not related to his COVID-19 claim, he must file the denial of optometric and dental care needs claim in a separate action. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (unrelated claims against different defendants belong in different suits, and prisoners must pay the required filing fees under the PRLA).

///

**CONCLUSION**

For the reasons state above, the Court orders as follows:

1. Plaintiff's claim for damages based on Defendants' actions in their official capacity is DISMISSED as barred by the Eleventh Amendment. The claim for damages against each in his individual capacity may proceed. Plaintiff's negligence claim for failure to provide masks at the start of the pandemic is DISMISSED for a failure to state a claim.

2. The claim for inadequate dental and optometric care is **DISMISSED with leave to amend**. Within **twenty-eight (28) days** of the date this order is filed; Plaintiff shall file a second amended complaint to correct the deficiencies described above. The second amended complaint must include the caption and civil case number used in this order, Case No. C 20-09415 BLF (PR), and the words "SECOND AMENDED COMPLAINT" on the first page. If using the court form complaint, Plaintiff must answer all the questions on the form in order for the action to proceed. The second amended complaint supersedes the original and amended complaints, these filings being treated thereafter as non-existent. *Ramirez v. Cty. Of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015). Consequently, claims not included in a second amended complaint are no longer claims and defendants not named in a second amended complaint are no longer defendants. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir.1992).

**In the alternative,** Plaintiff may file notice in the same time provided above that he wishes to proceed solely on the Eighth Amendment failure to protect from unsafe conditions claim, and strike all other claims from this action. The Court will then order the matter served on all named Defendants.

4. **Failure to respond in accordance with this order by filing a second amended complaint in the time provided will result in this matter proceeding on the cognizable Eighth Amendment claim discussed above and all other claims being stricken from the amended complaint without further notice to Plaintiff.**

9

5. The Clerk shall enclose two copies of the court's form complaint with a copy of this order to Plaintiff.

**IT IS SO ORDERED.**

Dated: __May 4, 2021_____

*[signature]*
BETH LABSON FREEMAN
United States District Judge

Order of Partial Dism. and Dism. with Leave to Amend
PRO-SE\BLF\CR.20\09415Cooper_dwlta

10